1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLEY L. DIMARTINI,<br><br>                            Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                            Defendant. | Case No.: 3:15-cv-00997-GPC-JMA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF Nos. 13, 14] |

## INTRODUCTION

Plaintiff Shelley L. Dimartini ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. (Pl.'s Mot. Summ. J. ("Pl. Mot."), ECF No. 13.) Plaintiff requests the Court to reverse the Commissioner's final decision and order the payment of benefits, or in the alternative, remand the decision to the Social Security Administration for a new hearing. (*Id.* 1.) Plaintiff and the Commissioner have filed a Motion and Cross-Motion for Summary Judgment, respectively. (Pl. Mot., ECF No. 13; Def.'s Cross Mot. Summ. J. ("Def. Mot."), ECF No. 14.) For the reasons discussed below, the Court

**DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.

## PROCEDURAL BACKGROUND[1]

On March 25, 2011, Plaintiff filed an application for SSI benefits alleging disability beginning March 20, 2011[2] due to "[b]ack, arm, shoulders, arthritis, depression, anxiety, insomnia, and high cholesterol." (Administrative Record ("AR") 113, ECF No. 10-4.)[3] The claim was denied on July 22, 2011, (*id.*) and upon reconsideration on April 27, 2012. (*Id.* 126). On July 25, 2013, Plaintiff appeared with counsel and testified at a hearing in San Diego, California. (*Id.* 27-70.) On August 5, 2013, the ALJ determined that Plaintiff has not been under a disability since her application was filed and was therefore not entitled to SSI benefits. (*Id.* 9-16.) On September 17, 2013, Plaintiff requested review of the ALJ's decision by the Appeals Council. (*Id.* 5.) The Appeals Council denied review on March 10, 2015, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* 1.)

On May 5, 2015, Plaintiff filed a Complaint seeking review of the Commissioner's final decision denying her application for SSI benefits. (Compl., ECF No. 1.) On August 18, 2015, the Commissioner filed an Answer to the Complaint. (Answer, ECF No. 9.) On October 22, 2015, Plaintiff filed a Motion for Summary Judgment, (Pl. Mot., ECF No. 13) and Defendant filed a Cross-Motion for Summary Judgment on November 23, 2015 (Def. Mot., ECF No. 14). Neither party filed an opposition. On August 18, 2015, the matter was referred to the Magistrate Judge for a Report and Recommendation ("R&R"). (R&R, ECF No. 11.)  However, this Court has decided to address the matter without an

---

[1] Prior to this case, Plaintiff has brought six disability claims; two of these claims have gone to hearing level. (AR 126, ECF No. 10-4.)

[2] Although Plaintiff originally alleged disability beginning July 25, 2003, Plaintiff amended the alleged onset date to the protected filing date of March 20, 2011. (AR 30, ECF No. 10-2.)

[3] The Court cites to the ALJ's decision because the application for disability benefits in the administrative record is one for disability insurance benefits dated May 13, 2011, not an application for supplemental security income benefits dated March 25, 2011. (AR 173-81, ECF No. 10-5.)

R&R.

## FACTUAL BACKGROUND

Plaintiff, a current resident of Carlsbad, California, was born on June 25, 1950 and was 63 years old at the time of the hearing. (AR 308, ECF No. 10-7.) She is a college graduate with some coursework towards a Master's degree. (AR 31-32, ECF No. 10-2.) Plaintiff's last relevant job was as a music teacher in 2003.[4] (*Id.* 16.) Plaintiff stopped working allegedly due to an injury to her back in July 2003, when an approximately 80 pound amplifier was dropped on her back. (*Id.* 54.) Plaintiff testified that she is unable to work because she cannot bend, lift, stoop, point to the music, carry a suitcase full of music, or drive to students' houses. (*Id.* 32.) She claims that these limitations, when combined with her anxiety, inability to concentrate, and depression, keep her from being able to meet the physical and mental demands of her prior job as a music teacher. (*Id.* 32, 34, 36.)

I.  **Medical Evidence**

   A.  **Plaintiff's Physical Impairments**

Between January 10, 2011 and June 4, 2013, Plaintiff received medical treatment at Neighborhood Healthcare from Dr. Margaret Chen. (AR 284-300, 311-342, 375-398, ECF No. 10-7.) Dr. Chen primarily treated Plaintiff's lower back pain, and regularly refilled Plaintiff's prescription medication. (*Id.*) In all of Plaintiff's records, Dr. Chen noted that Plaintiff's general appearance was well-developed and well-nourished, and that Plaintiff was in no acute distress. (*Id.*) On May 5, 2011, Plaintiff reported that she had completely taken herself off of Seroquel, and while she was not sleeping very well, she was satisfied with her overall condition. (*Id.* 335.) On April 2, 2012, Dr. Chen suggested epidural injections for Plaintiff's lower back pain. (*Id.* 397-98.) On October 2,

---

[4] Although Plaintiff has identified her previous job as a piano teacher, the Vocational Expert classifies Plaintiff's previous job as a music teacher under the Dictionary of Occupational Titles. (AR 38, ECF No. 10-2.)

2012, Plaintiff reported being glad to be off of Seroquel because she felt like she was "in a coma while on it." (*Id*. 389.) Plaintiff also reported that she was more active and doing yoga, but that her back pain was "a bit more of an issue." (*Id*.) Starting January 17, 2013, Plaintiff stopped reporting having back pains. (*Id*. 381.) On June 4, 2013, Dr. Chen noted in her review of symptoms that Plaintiff denied being in pain. (*Id.* 375.)

On July 22, 2011, State Agency medical consultant Dr. Hartman determined that Plaintiff was restricted to lifting and carrying twenty pounds occasionally and ten pounds frequently. (AR 95, ECF No. 10-3.) He determined that Plaintiff could stand, walk, and sit for six hours in an eight-hour workday. (*Id.* 96.) He placed no restrictions on how much Plaintiff could push or pull, and placed no postural restrictions. (*Id*.)

On April 11, 2012, Plaintiff underwent an orthopedic evaluation with Dr. Vincente Bernabe at the request of the Department of Social Services. (AR 355-360, ECF No. 10-7.) Dr. Bernabe found that Plaintiff had mild degenerative disc disease of the lumbar spine and musculoligamentous strain of the thoracolumbar spine. (*Id. 359.*) Nonetheless, he concluded that these findings presented only "a very mild disability" to Plaintiff. (*Id*.) Dr. Bernabe restricted Plaintiff to walking or standing six hours out of an eight hour day and lifting and carrying fifty pounds occasionally and twenty-five pounds frequently. (*Id.* 360.) He placed no restrictions on how much Plaintiff could push or pull, or on the amount of time she could sit. (*Id.*) He also placed no postural restrictions, such as bending, kneeling, crawling, crouching, and stooping. (*Id*.)

B.   **Plaintiff's Mental Impairments**

Between December 9, 2010 and May 23, 2013, Plaintiff received mental care at North Coastal Mental Health from psychiatrist Dr. John Donnelly. (AR 279-283, 361-374, ECF No. 10-6.) On May 22, 2012, Plaintiff reported that taking Remeron helped her calm down, but gave conflicting reports; she stated that she did not feel sedated but also that "she was falling into walls because it left her sedated." (*Id*. 373.) Plaintiff stated that her mood was "ok," but claimed that she was stressed and had difficulties with concentration and following through on tasks. (*Id*. 373-374.) Dr. Donnelly noted that

Plaintiff's inability to focus may be signs of ADHD. (*Id*. 374.) On August 31, 2012, Plaintiff reported that she gets about five to six hours of sleep with the use of Ambien, and that her energy level, mood, and concentration have improved. (*Id.* 369.) On November 9, 2012, Plaintiff complained of receiving harassing letters from "that creep," which were causing her anxiety. (*Id*. 367.) She also complained of low energy levels from insomnia. (*Id*.) Plaintiff reported that she did yoga and spent her days doing tasks such as reading, watching television, and doing her nails. (*Id*.) Plaintiff also expressed interest in starting to "volunteer to play piano at places," but that transportation was limited. (*Id*.) On January 3, 2013, Plaintiff reported that she does not feel like going out most of the time, and expressed a desire to become more socially active in the coming year. (*Id*. 365.) She stated that her appetite and energy level were "ok," and that her concentration was getting better. (*Id*.) Dr. Donnelly described Plaintiff's state as a "continued sense of unhappiness," and discussed the option of seeing a therapist. (*Id*. 366.) On April 4, 2013, Plaintiff reported that she started seeing a therapist, and that her mood was "ok." (*Id*. 363.) On May 23, 2013, Plaintiff reported that her therapist left the clinic and requested to see another therapist. (*Id*. 361-362.) Plaintiff stated that she had some element of depression, but that it was not as severe as it was in the past. (*Id*. 361.) In almost all progress notes, Dr. Donnelly noted that Plaintiff was alert, attentive, calm, cooperative, made direct eye contact, had fine grooming, and had coherent and organized speech, but that her affect was restricted. (*Id*. 280, 361, 363, 365, 368, 369, 371, 373.) He also noted throughout his reports that Plaintiff's depression was recurrent and in partial remission, and that her alcohol and cocaine dependence were on full sustained remission. (*Id.*) In all his notes, Dr. Donnelly diagnosed Plaintiff with a Global Assessment of Functioning (GAF) of 50.[5] (*Id.* 281, 362, 364, 366, 368, 370, 372, 374.)

---

[5] "'A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.' [citations omitted] According to the DSM–IV, a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.' A GAF score between 51 to 60 describes 'moderate

On March 27, 2012, Plaintiff received a medical status examination at Scripps Memorial Hospital from psychiatrist Dr. Jaga Nath Glassman at the request of the Department of Social Services. (AR 349-53, ECF No. 10-7.) Dr. Glassman noted that Plaintiff arrived on time to her appointment, appeared well-developed and well-nourished, was mildly unkempt in her physical presentation, had clothes that appeared clean, and had "nice makeup" on, including fingernail and toenail polish. (*Id.* 351-352.) Dr. Glassman also noted that Plaintiff was "well-engaged with the examiner, making and maintaining good eye contact," and was "cooperative, polite, and respectful in her attitude and demeanor." (*Id.* 352.) Further, he observed that Plaintiff's mood was generally "sour" and depressed with limited range in affect, but that her thought processes were "coherent, relevant, and goal-directed," with "no evidence of any psychotic symptoms." (*Id.*) Dr. Glassman determined that Plaintiff was able to follow all instructions, had socially appropriate behavior, presented "average to above-average intellectual functioning," was "alert and oriented," performed well on formal memory and concentration testing, and performed math calculations correctly. (*Id.*) Dr. Glassman diagnosed Plaintiff with: (1) "Pain Disorder with Medical and Psychological Factors. Dysthymic Disorder"; (2) "Dysfunctional Personality Features, Probably Borderline Personality Disorder"; and (3) "Musculoskeletal/Orthopedic Problems." (*Id.*) He rated Plaintiff's GAF at 60, and noted that Plaintiff had mild limitations in her capacity to maintain concentration, persistence, and pace, and in adapting to changes and stresses in a workplace setting. (*Id.* 353.) However, he noted that despite these limitations, Plaintiff was capable of behaving in a socially-appropriate manner, getting along adequately with others, and understanding and following simple and complex instructions. (*Id.*)

On July 22, 2011 and April 24, 2012, State Agency psychological consultants, Dr. Skopec and Dr. Goosby performed case analyses on Plaintiff's medically determinable

---

symptoms' or any moderate difficulty in social, occupational, or school functioning." *Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

impairments and severity. (AR 94, 108, ECF No. 10-3.) They described Plaintiff as having mild limitations in activities of daily living, in social functioning, in concentration, persistence, or pace, and as having no episodes of decompensation. (*Id.*) Dr. Goosby noted that Plaintiff's mental impairments cause "no more than mild limitations." (*Id.* 108.)

## II. Vocational Expert Testimony

Vocational expert ("VE") Mark Remas testified that Plaintiff's past work as a music teacher is a "skilled" and "light work," as described in the Dictionary of Occupational Titles ("DOT"). (AR 37-38, ECF No. 10-2.) The ALJ asked the VE five hypothetical questions geared towards exploring various physical and mental restrictions and their effects on Plaintiff's ability to perform her past relevant work. (*Id.* 38-42.)

In response to the first hypothetical, the VE testified that a person with the following limitations could still work as a music teacher: a person who can lift and carry twenty pounds occasionally and ten pounds frequently; can stand or walk six hours in an eight hour day or sit six hours in an eight hour day; has difficulty with attention and concentration but can concentrate for two hour segments; and has trouble with attendance and punctuality such that she has difficulty completing a normal workday or workweek, but does not miss work more than one day per month. (*Id.* 38.)

In response to the second hypothetical, the VE testified that a person with the following limitations could still work as a music teacher: a person who has the limitations of the first hypothetical; has difficulty in handling workplace stress; and is limited to occasional stooping, crouching, kneeling, crawling, or climbing stairs. (*Id.* 38-39.)

In response to the third hypothetical, the VE testified that a person with the following limitations could not work as a music teacher: a person who has the limitations of the second hypothetical; can lift and carry ten pounds occasionally and ten or less frequently; and stand or walk two to four hours in an eight hour day. (*Id.* 39.) However, the VE clarified that the DOT's definition of a music teacher includes all levels of teachers as well as all instruments, and that a piano teacher would still be able to continue

her work in a piano studio or have students come to them. (*Id*.)

In response to the fourth hypothetical, the VE testified that a person with the following limitations could not work as a music teacher: a person who has the limitations of the third hypothetical; can lift and carry five pounds occasionally or frequently; and sit four hours out of an eight hour day. (*Id.* 40.)

In response to the fifth hypothetical, the VE testified that a person with the following limitations could not work as a music teacher: a person who has the limitations of the second hypothetical; has trouble with attention and concentrating for two hour segments; and has greater problems with attendance and punctuality, causing her to be absent two to three days per month. (*Id.* 41.)

**III.   The ALJ's Decision**

For purposes of the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant meets this definition, the ALJ employs a five-step sequential evaluation. 20 C.F.R. § 416.920(a); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). If the ALJ determines that a claimant is either disabled or not disabled at any step in the process, the ALJ does not continue on to the next step. *See* 20 C.F.R. § 416.920(a)(4); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), the claimant can still do his or her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a). Between steps three and four, the ALJ must, as an intermediate step,

assess the claimant's RFC. *See* 20 C.F.R. § 416.920(e); *Bray*, 554 F.3d at 1222-23. The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *Bray*, 554 F.3d at 1222.

The ALJ applied the five-step sequential framework to determine that Plaintiff is not disabled. (AR 11-16, ECF No. 10-2.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 25, 2011, the date of her application for SSI benefits. (*Id.* 11.) At step two, the ALJ found that Plaintiff has severe physical impairments of lumbar spine degenerative disc disease and strain, but non-severe mental impairments of pain disorder with medical and psychological factors, dysthymic disorder, and borderline personality disorder.[6] (*Id.*) At step three, the ALJ found that Plaintiff's impairments either singly or combined does not meet or equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart. P, Appendix 1. (*Id.*) At step four, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b),[7] including the capacity to perform occasional postural activities. (*Id.* 13.) Given Plaintiff's RFC, the ALJ determined that Plaintiff is capable of performing her past relevant work as a music teacher, which "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.* 16.) Therefore, the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act, since March 25, 2011. (*Id.*)

## LEGAL STANDARD

A district court has jurisdiction to review final decisions of the Commissioner of Social Security. 42 U.S.C. § 405(g). Section 405(g) permits the court to enter a judgment

---

[6] The ALJ determined that Plaintiff's medically determinable mental impairments are non-severe because they cause no more than "mild" limitation in the first three functional areas of activities of daily living, social functioning, and concentration, persistence or pace, and "no" episodes of decompensation in the fourth functional area. *See* 20 C.F.R. § 416.920a(d)(1). (AR 12, ECF No. 10-2.)

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

affirming, modifying, or reversing the Commissioner's final decision. *Id*. The matter may also be remanded to the Commissioner for further proceedings. *Id*. The scope of judicial review is limited, and the Commissioner's final decision should not be disturbed unless it is "not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotations and citations omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (internal quotations and citations omitted). The evidence must be "more than a mere scintilla," but may be less than a preponderance. *Id.* Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

## DISCUSSION

Plaintiff argues that the final decision by the Commissioner is not supported by substantial evidence and is erroneous as a matter of law for two reasons: (1) the ALJ failed to properly evaluate Plaintiff's RFC by failing to include the mental limitations that he found; and (2) the ALJ erroneously determined that Plaintiff was capable of performing her past relevant work. (Pl. Mem., ECF No. 13-1.)

### I.  The ALJ Properly Evaluated Plaintiff's RFC

The RFC is the most a claimant can still do despite any physical or mental limitations that affect her ability to perform work-related tasks. 20 C.F.R. § 416.945(a)(1). If the claimant has more than one impairment, the ALJ must consider all of the claimant's medically determinable impairments of which the ALJ is aware, including the claimant's medically determinable impairments that are non-severe, as explained in §§ 416.920(c), 416.921, and 416.923. *Id* § 404.945(a)(2). *See also Burch*, 400 F.3d at 683 ("In assessing RFC, the adjudicator must consider only limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe.") (citing to Social Security Ruling 96-8p (1996)); *Hutton v. Astrue*, 491 F. App'x

850, 850 (9th Cir. 2012) (finding that the ALJ erred by not considering the claimant's non-severe medically determinative impairment). The RFC assessment is "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.945(a)(3). The ALJ must consider "statements about what the claimant can still do that have been provided by medical sources, whether or not they are based on formal medical examinations." *Id.* The ALJ will also consider descriptions and observations of the claimant's limitations from her impairment(s). *Id.* The court must affirm the ALJ's determination of the claimant's RFC if the ALJ applied the proper legal standards and the decision is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff does not dispute the ALJ's RFC assessment of her physical limitations. Rather, Plaintiff relies on *Hutton v. Astrue* to argue that the ALJ made a legal error by failing to include Plaintiff's mild mental limitations in the RFC as reported by Dr. Skopec, Dr. Goosby, and Dr. Glassman. (Pl. Mem. 3-4, ECF No. 13-1.) The Commissioner responds that the ALJ properly considered Plaintiff's non-severe mental impairments, and thus did not commit legal error. (Def. Mem. 7, ECF No. 14-1.)

Contrary to the findings in *Hutton* that the ALJ failed to consider the claimant's non-severe medically determinative impairments, the Court finds that the ALJ properly accounted for Plaintiff's non-severe mental limitations in the RFC, in accordance with the medical evidence in the record. *See Hutton*, 491 F. App'x at 850. The ALJ considered the records of psychological consultants Dr. Skopec and Dr. Goosby to determine that Plaintiff's mental impairments cause no more than mild limitations, and found these records consistent with those of psychiatrist Dr. Glassman. (AR 14, ECF No. 10-2.) The ALJ included Dr. Glassman's findings, that despite Plaintiff's mild limitations in concentration, persistence, and pace, Plaintiff was alert and oriented, performed well on formal memory and concentration tests, and performed math calculations correctly. (*Id.* 14-15.) The ALJ accounted for Dr. Glassman's findings that, despite Plaintiff's mild limitation in adapting to changes and stress in the workplace, Plaintiff still retained the capacity to behave in a socially appropriate manner, get along adequately with others,

and make good eye contact. (*Id.* 14.) The ALJ also considered the results from Plaintiff's mental examination with Dr. Donnelly, finding that Plaintiff had good engagement, was cooperative, and exhibited socially appropriate behavior. (*Id.* 14-15.) In determining that Plaintiff's activities of daily living "are not limited to the extent one would expect," the ALJ considered Dr. Donnelly's notes of Plaintiff's daily activities consisting of shopping in stores, running errands, doing yoga, visiting with family, reading, doing her nails, considering volunteering to play piano, and riding the bus. (*Id.* 15.) The ALJ accounted for Plaintiff's depression and substance abuse from Dr. Donnelly's records, finding that Plaintiff's depression is in partial remission and her substance abuse in full sustained remission. (*Id.*) The ALJ also considered Dr. Donnelly's medical notes that despite Plaintiff's "restricted affect, she was nonetheless alert, oriented, attentive, cooperative, made direct eye contact, had relevant, coherent, organized speech, no psychotic symptoms and adequate insight and judgment." (*Id.*)

Upon reviewing the ALJ's assessment of the RFC, the Court finds that the ALJ engaged in a sufficient assessment that was consistent with the mental limitations identified in the medical record. *See* 20 C.F.R. § 416.945(a)(2). Accordingly, the Court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence and is free from material legal error.

## II.     The ALJ Properly Determined that Plaintiff is Capable of Performing Her Past Relevant Work

At step four of the sequential evaluation framework, a claimant has the burden of showing that she can no longer perform her past relevant work. *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). Although the burden of proof lies with the claimant, the ALJ still has a duty to make the requisite factual findings to support his conclusion. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). This is done by looking at the RFC and the physical and mental demands of the claimant's past relevant work. *Id.* at 844.

Plaintiff relies on the VE's response to the ALJ's fifth hypothetical[8] to argue that the ALJ erroneously determined that Plaintiff is capable of performing her past relevant work as a music teacher. (AR 5-8, ECF No. 10-2.) Specifically, Plaintiff asserts that the VE's response to the fifth hypothetical is a testimony that Plaintiff's "mild limitations in social functioning and mild limitation in concentration, persistence, or pace" preclude Plaintiff from performing her past work as a music teacher. (Pl. Mem. 6, ECF No. 13-1.) The Commissioner argues that Plaintiff's reliance on the VE's testimony is misplaced because it does not accurately represent Plaintiff's limitations. (Def. Mem. 7, ECF No. 14-1.)

Finding above that the ALJ's assessment of Plaintiff's mental limitation in the RFC was proper, the Court does not find support for Plaintiff's argument that Plaintiff has the functional restrictions presented in the fifth hypothetical, such as trouble with attendance and punctuality causing her to be absent two to three days a week, and difficulty in maintaining attention and concentration causing her to have trouble concentrating for two hour segments once or twice a week. Rather, the VE's testimony in response to the ALJ's first and second hypotheticals[9] support a finding that is consistent

---

[8] In response to the ALJ's fifth hypothetical, the VE testified that a person with the following limitations would not be able to perform Plaintiff's past relevant job as a music teacher: a person who can lift and carry twenty pounds occasionally and ten pounds frequently; can stand or walk six hours in an eight hour day or sit six hours in an eight hour day; is limited to occasional stooping, crouching, kneeling, crawling, or climbing stairs; has trouble with attendance and punctuality such that she would have difficulty completing a normal workday and workweek, causing her to be absent two to three days a week; has difficulty in handling workplace stress; and has difficulty in maintaining attention and concentration such that she would have trouble concentrating for two hour segments once or twice a week. (AR 41, ECF No. 10-2.)

[9] In response to the first hypothetical, the VE testified that a person with the following limitations could work as a music teacher: a person who can lift and carry twenty pounds occasionally and ten pounds frequently; can stand or walk six hours in an eight hour day or sit six hours in an eight hour day; has difficulty with attention and concentration for longer than two hours; and has trouble with attendance and punctuality and completing a normal workday or workweek. (*Id*. 38.)

In response to the second hypothetical, the VE testified that a person with the following limitations could work as a music teacher: a person who has the limitations of the first hypothetical; is limited to occasional stooping, crouching, kneeling, crawling, or climbing stairs; and has difficulty in handling workplace stress. (*Id*. 38-39.)

with the medical evidence considered in the RFC. No medical source opined that Plaintiff has any functional restrictions from her mild mental limitations. Plaintiff does not provide, and the record does not contain, any evidence indicating that Plaintiff has any functional restrictions that prevent her from performing her prior job as a music teacher. Therefore, the Court finds that Plaintiff fails to meet her burden of showing that she can no longer perform her past relevant work.

The Court finds that there is substantial evidence grounded in the RFC assessment and the VE's testimony that supports the ALJ's conclusion that Plaintiff is able to perform the duties of her past relevant work as a music teacher.

## CONCLUSION

Based on the foregoing review of the relevant law and the administrative record, the Court finds that the Administrative Law Judge applied the correct legal standards when he denied Plaintiff's claim for supplemental security income benefits, and that his conclusions are supported by substantial evidence. Therefore, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

Dated:  August 4, 2016

Hon. Gonzalo P. Curiel
United States District Judge